[Civ. No. 6875. First Appellate District, Division One.—October 30, 1929.]

J. D. GROVE et al., Respondents, v. EDWARD MORRIS et al., Appellants.

Frank W. Taft for Appellants.

Charles Kasch for Respondents.

KNIGHT, J.—The defendants appeal from an adverse judgment in an action to recover rentals claimed to be due under the terms of a written lease and for damages on account of the alleged loss and conversion of personal property while defendants were in possession of the leased premises.

The lease was entered into on December 7, 1925, between plaintiffs, J. D. Grove and wife, and the defendants Morris and Ingvason, doing business under the name of Certified Seed Farms Company, and the portions thereof necessary to be considered here read as follows: " . . . The said lessor do lease and let unto the said lessee, all those lands situate in Little Lake Valley, Mendocino County, California, known as the Groves Ranch, . . . containing approximately 1080 acres, for a period of one calendar year from the date of this contract, together with an option for the continuance of the time of this lease, under the terms and conditions herein set forth, up to and including December 6th, 1932, for a consideration of Two Thousand ($2,000.00) Dollars cash in hand paid, receipt whereof is hereby acknowledged under the following terms and conditions, to-wit: . . . The lessee shall also have full possession of all live stock, farm equipment and small tools in accordance with list of same attached hereto, and made a part hereof, and shall use the same to its advantage. All tools and articles lost during the term of this lease shall be charged to the lessee at inventory prices and paid for at the expiration of the lease. The lessee shall not be held liable for losses or death of said livestock, except as through deliberate act to destroy upon the part of the lessee. Lessee shall be empowered to sell all of the cattle of the original inventory, at any time during the term of this lease, at an average price of $50.00 per head, for the credit of the lessor; said proceeds from such sale to be used for the purchase of sheep at prices to be stipulated by the lessor. All household effects left by the lessor for the use of the lessee shall likewise be inventoried,

and any losses which might occur by reason of negligence of the lessee shall be charged to lessee, but there shall be no charge for reasonable wear and tear thereof. . . . Should lessee relinquish leasehold rights under this agreement at the termination of any current year thereof, a written notice of such intent shall be delivered to lessor prior to October 1st, of any current year thereof, and shall permit the lessor to enter for purpose of plowing and cultivation of said land, on or after November 1st, of said current year. . . ."

The personal property enumerated in the inventory attached to the lease consisted generally of livestock, including forty-seven head of cattle, ranch equipment and machinery, tools, harnesses, household furniture, etc. Morris and Ingvason paid the rent for the first year in advance as provided in the lease and went into the possession of the property. On July 13, 1926, they assigned the lease to the defendant Mrs. Long, but the assignment contained no covenants or other assumption of obligations on the part of the assignee. Upon leasing the ranch Grove and his wife moved to Contra Costa County, but about the time the assignment was made, and being evidently unaware of the fact that the lease had been assigned, Grove returned to the ranch presumably for the purpose of inspecting the livestock and of removing certain personal effects he had left there. More or less bitterness was engendered by his presence there, and on July 30, 1926, Mrs. Long sent him a telegram from Oakland reading as follows: "From the date you quit premises I assume responsibility for personal property listed under lease and now on premises, except household furniture which is agreeable to Hesselwerdt you may store upstairs at your own risk. (signed) A. R. Long,"—immediately upon receipt of which Grove quit the premises. Following the assignment, Mrs. Long placed a man named Hesselwerdt in charge of the ranch, and about December 1, 1926, at the request of Morris and Ingvason, Mrs. Long caused all of the cattle to be sold at $45 a head, and the proceeds from the sale to be deposited in her name in a bank in Willits. About two weeks later the ranch was entirely abandoned, and up to the time of the trial of this action remained wholly unoccupied; but no notice whatever of the abandon-

ment was given to plaintiffs, nor was any reassignment of the lease ever made.

The complaint was filed on March 2, 1927, and contained four causes of action. The first was for the recovery of the rental and the second for the value of the personal property (other than cattle) claimed to have been lost or converted during defendants' occupation of the ranch; the third was for damages on account of the alleged conversion of the cattle, and the fourth for damages for alleged waste. The action came on for trial in October, 1927, and findings were made and judgment entered on March 2, 1928. No relief was granted under the fourth cause of action, but with respect to the other three judgment was entered in plaintiffs' favor as follows: for the rental of the premises from December 7, 1926, up to the date of the commencement of the action; $755.25 for loss or conversion of the personal property (other than the cattle), and $2,350 as damages for the conversion of the cattle. All of said amounts, except the rent, were apportioned in the findings and judgment between the original lessees, Morris and Ingvason, and their assignee, Mrs. Long, with the provision that if within fifteen days after notice of the entry of judgment Mrs. Long returned any of the personal property with which she had been charged, the amount of the judgment would be reduced accordingly. Within the period allowed certain property was redelivered and the total amount of the judgment was reduced $123.50. The judgment further provided that payment of any part thereof by one of the parties should operate as a *pro tanto* satisfaction in favor of the others.

The trial court construed the terms of the lease as requiring the annual rental to be paid in advance, and accordingly gave judgment against the original lessees, Morris and Ingvason, for $2,000, which covered the period between December 7, 1926, and December 7, 1927; and appellants contend that such construction is erroneous. After examining the entire lease it is apparent that the same is inartificially drawn, but when the surrounding circumstances, including the size and character of the ranch and the fact that a large amount of livestock and personal property was turned over to the lessees at the time the lease was executed, are taken into consideration in connection with the wording

of the lease, which admittedly required the first year's rental to be paid in advance, we are of the opinion that the construction adopted by the court is not unreasonable.

 It was alleged in the complaint and denied in the answer that the lease was terminated at the time of the abandonment of the ranch at the end of December, 1926, and upon that issue the trial court found that the lease had not been terminated, its finding being as follows: "And the court further finds that said lease was not terminated on the 1st day of January, 1927, or at any other time. And the court further finds that plaintiffs did not enter or take possession of said premises at any time, or terminate said lease. And the court further finds that said lease is still in full force and effect. And the court further finds that the defendants Morris and Ingvason have violated the covenants of the lease and abandoned said property. And the court further finds that no notice has been served upon plaintiffs to terminate said lease as required by law. And the court further finds that the plaintiffs have not, nor have either of them, ejected the said defendants, or any of them, from the aforesaid premises, or any part thereof."

Appellants criticise the foregoing finding as being "paradoxical." In support of such criticism they argue that, while the judgment for rental must necessarily be founded upon the theory that the lease was not terminated, the judgment for the value of the lost personal property and the judgment for damages for conversion of the cattle must necessarily be founded upon the theory that the lease was terminated. And in this regard appellants say that if the lease was not terminated, under its terms the lessees were not required to pay for the lost property until "the expiration of the lease," and that they had the right to hold the proceeds derived from the sale of the cattle for the purchase of sheep.

As already stated, appellants in their answer denied that the lease was terminated, and the court so found, and the finding is supported by the evidence and the law. Consequently, appellants are not in a position now to claim that the lease was terminated; and since it was not terminated, the court was warranted in giving judgment for the rental from December 7, 1926, to the date of the commencement of this action.

■ Nor do we find anything inconsistent in giving judgment for the conversion of the cattle upon the theory that the lease was not terminated. True, appellants had the right under the terms of the lease to sell the cattle, which they did in December, 1926, but they were required to·use the proceeds from the sale for the purchase of sheep which, up to the time of trial in October, 1927, they had not done, and in this respect the court found: " . . . that defendant Long sold the cattle on said premises and converted the proceeds thereof to her own use"; and "that said funds were not used for the purpose of purchasing sheep"; and "that the defendants did not, nor did either of them ever desire or intend to use said funds for the purchase of sheep." The foregoing finding, being supported by the evidence, is legally sufficient to sustain the portion of the judgment to which it relates.

■ We are of the opinion, however, that the judgment for the alleged value of the property claimed to have been lost by appellants cannot be sustained for two reasons: first, the lease provided that "all tools and articles lost during the term of this lease shall be charged to the lessee at inventory prices and *paid for at the expiration of the lease*" (italics ours), and the court found that at the time of the commencement of the suit and the entry of judgment the lease had not expired, but was in full force and effect. The allowance for lost articles was therefore premature. ■ Secondly, and in any event, the evidence was wholly insufficient to warrant a judgment for the sum of $755.25 for the loss of said property. As already appears, the articles of personal property with which appellants were charged were enumerated in an inventory attached to the lease, although no prices were specified; but the judgment for $755.25 is based wholly upon another list of property prepared by Grove from memory shortly prior to trial, which purports to set forth the value of each article there listed, and which included some forty articles not enumerated in the inventory attached to the lease. The value of those extra articles totaled $444.83, leaving $310.42 as the value of the articles enumerated in the inventory attached to the lease; and the latter sum included an item of "motor saw and 2 blades" which the court found later was worth only $26.50 instead of $202.50 as set forth in Grove's separate list.

When the difference of $176 is deducted from the sum of $310.42 representing the net value of said property, a balance of only $134.42 remains; and, according to Grove's testimony, the property remaining on the ranch at the time of trial was worth $100. Consequently, according to the evidence adduced, the maximum amount for which a judgment could have been allowed for the loss of the personal property, assuming plaintiffs were entitled to the same, was $34.42. The other points raised by appellants' brief are merely incidental to the main questions already decided and therefore do not require discussion.

For the reasons stated the judgment is modified by striking therefrom paragraphs "c" and "g," which relate to the allowances for lost property, and by correspondingly reducing the total amount set forth in paragraph "d" to $4,350 and the total amount set forth in paragraph "h" to $2,458.33; and as thus modified the judgment will stand affirmed, respondents to recover their costs.

Tyler, P. J., and Cashin, J., concurred.